# EXHIBIT A

Case 8:26-cv-01695-WFJ-CPT    Document 1-1    Filed 06/09/26    Page 2 of 14 PageID 8

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT**
**IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**
**CIVIL DIVISION**

**ROBERT WAGNER,**

      **Plaintiff,**

**v.**                                **Case:**

**VERISK ANALYTICS, INC.,**

      **Defendant.**

_____/

## CIVIL ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, **ROBERT WAGNER**, ("Mr. Wagner"), by and through his attorneys, Seraph Legal, P.A. and Joshua Smith, P.A. files this Complaint against **VERISK ANALYTICS INC.** ("Verisk") and sets forth as follows:

## PRELIMINARY STATEMENT

1.      This is an action brought by Mr. Wagner against Verisk for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

2.      In enacting the FCRA, Congress found "a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy," 15 U.S.C. § 168l(a)(4). Congress enacted the FCRA in order:

> to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

15 U.S.C. § 1681(b).

3.      Verisk is a consumer reporting agency who produces and sells consumer reports containing information related to insurance claims, including claim information, premium and loss

records, among other information.

4.      As a consumer reporting agency, Verisk is required by law to provide the consumer with a clear and accurate disclosure containing all of the information in Verisk's file on the consumer, upon request.   15 U.S.C. § 1681g.

## JURISDICTION AND VENUE

5.      Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p and § 26.012, Fla. Stat.

6.      Verisk is subject to the provisions of the FCRA and is subject to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat.

7.      Pursuant to § 47.011, Fla. Stat., venue is proper in the Hillsborough County, Florida, as the acts complained of were committed and / or caused by the Defendant within Hillsborough County.

## PARTIES

### Mr. Wagner

8.      Mr. Wagner is a natural person who at all times relevant has resided in Hillsborough County, Florida.

9.      Mr. Wagner is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c), as he is a natural person residing in Hillsborough County, Florida.

### Verisk

10.      Verisk is a New Jersey corporation, with a principal business address of 545 Washington Blvd., Jersey City, NJ 07310-1686.

11.      Verisk is a nationwide *Consumer Reporting Agency* ("CRA") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, and/or on a cooperative nonprofit basis,

it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facilities of interstate commerce, specifically the mail and internet, for the purpose of preparing or furnishing consumer reports.

12.   From this consumer data, Verisk generates Consumer Reports called A-Plus Reports.

13.   Assuming Verisk provides such reports through a subsidiary, Verisk maintains control and ownership of that subsidiary.

14.   An A-Plus Report is a Consumer Report supplied by Verisk, which is used by a property and casualty insurance company to evaluate an insurance applicant or current insured's claims history.

15.   Importantly, Verisk/ISO states that A-Plus reports are **only** generated by the system and sent to the requesting insurance company if there are prior claims.[1]

**A TYPICAL A-PLUS™ PROPERTY REPORT**
When an insurance applicant applies to an A-PLUS™ insurer, the underwriting office may conduct a search of the A-PLUS database for prior claims information on the applicant or risk location. If there are claims, a report similar to the one shown here would be generated by the system and sent to the requesting insurer (see back page for common abbreviations).

16.   Thus, for any A-Plus report to be generated, it must contain some information in the credit file relating to prior property insurance claims.

17.   Therefore, no person accessing an A-Plus report can claim that they were not put on notice of prior property insurance claims by a consumer.

---

[1]   How To Read An A-Plus Property Report, The Best Underwriting Intelligence in the Business, https://www.cwico.com/app/HOApp/HelperPages/DOC_How_to_Read_an_A_PLUS_Property_Report.pdf (last accessed, November 2, 2025).

## FACTUAL ALLEGATIONS

18.    On February 4, 2016, Mr. Wagner applied for insurance through a Frontline insurance agency/producer, Italiano Insurance Services, Inc. ("Italiano"), from which Mr. Wagner had purchased multiple prior insurance policies.

19.    Italiano was aware that Mr. Wagner had made multiple prior insurance claims within the last five years.

20.    As Frontline's, appointed agent/provider, Italiano independently filled in the application questions without Mr. Wagner's participation, and with respect to the application question regarding "prior losses," Frontline's appointed agent/producer answered the question in the negative, despite knowing that Mr. Wagner had made prior "insurance claims" in the prior five years. The exact application question follows:

| LOSS HISTORY | | | | | | APPLICANT'S INITIALS: |
|---|---|---|---|---|---|---|
| ANY LOSSES, WHETHER OR NOT PAID BY INSURANCE, DURING THE LAST FIVE YEARS, AT THIS OR ANY OTHER LOCATION? | | YES | NO  X | IF YES, INDICATE BELOW | | |
| DATE | TYPE | | DESCRIPTION OF LOSS | | | AMOUNT |
| | | | | | | |
| **PRIOR COVERAGE** | | | | | | |
| PRIOR CARRIER | | | PRIOR POLICY NUMBER | | PRIOR POLICY EXPIRATION DATE | |
| Universal Property & Casualty | | | 892-093-903 | | 02/15/2016 | |

21.    The application contained Mr. Wagner's full name, phone number, social security number and home address and additional personal data that would enable Frontline and Verisk to identify Mr. Wagner's personal consumer and credit information.

22.    Thereafter, Italiano pressed submit and Frontline bound the subject policy on February 4, 2016, for a premium of $2,948.00.

23.    On the same day, per Frontline new business policy, and to assist in Frontline's underwriting evaluation on whether to issue a policy to Mr. Wagner, Frontline requested an A-Plus Report from Verisk to examine prior loss history.

24. On February 4, 2016, Verisk generated an A-Plus Report, which pursuant to Verisk's above statement are only generated if a consumer has prior claims on his record.

25. However, in conflict with Verisk's assertions, Frontline claims that there was not a single claim on the February 4, 2016 A-Plus Report, despite having complete access to the information contained in Mr. Wagner's application.

26. Additionally, Frontline claims that Frontline never downloaded a copy of the February 4, 2016 A-Plus Report and therefore Frontline does not have a copy to support its position that Frontline did not have any actual or constructive knowledge of Mr. Wagner's prior "insurance claims."

27. Specifically, Frontline's Underwriting Corporate Representative, Jennifer Mara, testified as follows:

Frontline ran an A-Plus Report on this property for this insured prior to binding; is that correct?
A Yes. We run an A-Plus Report on every policy prior to being issued.
times, but I need it for the record. Frontline does not have that A-Plus Report, because it was not downloaded; is that correct?
A Correct; because the process back then was if there was no losses that were disclosed on the A-Plus Report, it was not generated. The document was not printed and generated into the system. It was only if there was prior losses that did pull up on the report that the report was actually printed into the file.

*Mara Depo. Tr. Vol II, 55:5-19, taken Jan. 26, 2026.*

### Frontline Increased Mr. Wagner's Premiums Based on A-Plus Report

28. As stated, in 2016, Frontline with knowledge of Mr. Wagner's prior insurance claims or loss history bound the subject policy for the initial policy premium of $2,948.00.

29.    Additionally, upon information and belief, each year at policy renewal through 2026, Frontline ran a new A-Plus Report and each A-Plus Report was utilized, at least in part, to increase Mr. Wagner's premiums, which by 2025 had increased to over $10,000.00 per year (a more than 300% increase) for the same policy and same coverage.

30.    On October 17, 2022, after seven (7) years of continuous Frontline insurance coverage, Mr. Wagner made a windstorm roof claim on his Frontline insurance policy.

31.    Frontline denied the claim, alleging that Mr. Wagner had intentionally or fraudulently answered the 2016 application question.

32.    Frontline did not rescind the subject policy or refund any of Mr. Wagner's seven (7) years of premiums.

33.    Upon information and belief, Mr. Wagner's prior loss information was contained within the February 4, 2016, and yearly renewal, A-Plus Reports that Frontline ordered from Verisk.

34.    Nevertheless, Frontline continued to insure Mr. Wagner despite knowledge of the prior losses, while at the same time refusing to confirm whether it would cover any additional loss that may occur.

35.    In fact, January 26, 2026, Frontline's Underwriting Corporate Representative, Jennifer Mara, testified during a deposition taken through litigation relating to the denial of Mr. Wagner's claim, that Frontline was aware of Plaintiff's prior claims, but continued to insure property the property anyway and Frontline did not know if it would even pay any future claims as follows:

But -- so you realize that Mr. Wagner has prior claims; is that right?

A    Yes.

Q    And yet you continue to insure the property; is that correct?

Page 105

A    Yes.

Q    And you're not going to cover his claim because of those misrepresentations; is that right?

A    As far as the claim denial?

Q    Yes.

A    Yes, that is correct.

Q    If my client's house were to burn down tomorrow, God forbid, would that loss be covered?

MS. MARSH:  Objection.

THE WITNESS:  I can't speak to future scenarios.

*Mara Depo. Tr. Vol II, 104:21-105:11, taken Jan. 26, 2026.*

36.    In other words, Frontline was actively providing illusory coverage based in part upon Verisk A-Plus Reports.

**Mr. Wagner's Request for all Information in Verisk's File on Mr. Wagner**

37.    On June 3, 2025, Mr. Wagner discovered for the first time that any A-Plus Report had ever been ordered or utilized during his insurance coverage with Frontline, let alone potentially yearly during every renewal from 2016 to the present.

38.    At that time, significant litigation ensued surrounding the existence of A-Plus Reports and how Frontline used the A-Plus Reports against Mr. Wagner without his knowledge and without Frontline issuing a single Adverse Action Notice.

39.     After Frontline's inadvertent disclosure of Frontline's use of A-Plus Reports in its underwriting process, which would show prior loss history, Mr. Wagner propounded discovery to Frontline requesting a copy of the February 4, 2016 A-Plus Report.

40.     However, Frontline stated that it did not maintain a copy of the A-Plus Report because allegedly the A-Plus Report did not "trigger" any additional underwriting and therefore was not printed or downloaded to Frontline's system.

41.     On September 10, 2025, Mr. Wagner submitted to Verisk a request for a complete copy of all consumer data that Verisk maintains on Mr. Wagner.

42.     On November 12, 2025, Verisk provided its first response to Mr. Wagner's request and sent an A-Plus Report that included prior claims, but did not include all of the consumer data maintained by Verisk or requested by Wagner.

43.     Specifically, Verisk noted that First Protective/Frontline had requested a copy of Mr. Wagner's "history" within the past year as follows:

Our records indicate that the insurance companies listed below have requested a copy of your history within the past year.

☐ A-PLUS Auto History

☒ A-PLUS Property History

   1.  First Protective

44.     In response to Verisk's response, on November 26, 2025, Mr. Wagner again sent Verisk correspondence outlining in detail the statutory basis for Verisk to provide the following information:

> a full and complete consumer disclosure of all information Verisk/ISO/A-Plus maintains on my client, Robert Curtis Wagner, in its A-PLUS loss-history files and database—including any and all prior A-Plus Reports that have been created or sent to any other entity regarding Mr. Wagner.

45.     Following Mr. Wagner's November 26, 2025 letter to Verisk requesting the complete disclosure of all consumer data maintained by Verisk on Mr. Wagner, the following, Mr. Wagner's counsel continued to regularly contact Verisk in efforts to obtain the requested disclosure. A timeline of the relevant communications is as follows:

a) 11.26.25 - Letter sent via email AND Certified mail requesting Mr. Wagner's file.

b) 12.1.25 - Mr. Wagner sent follow-up email to Verisk regarding request.

c) 12.3.25 - Mr. Wagner sent follow-up email to Verisk regarding request.

d) 12.4.25 - Certified mail 11/26 letter delivered.

e) 12.5.25 - Mr. Wagner sent follow-up email to Verisk regarding request.

f) 12.9.25 - Mr. Wagner sent follow-up email to Verisk regarding request.

g) 12.10.25 - Mr. Wagner called Verisk and spoke with an A-Plus consumer rep, who could not locate the letter in her file (she further stated it could still be processing). Advised she would have a supervisor call me back when they got back from lunch.

h) 12.10.25 - Supervisor Melissa called back stating they did not receive the documentation. She was familiar with the New Jersey address it was mailed to but further stated that's not the location she is at. I also provided her with the email address it was sent to and she was "unfamiliar" with the email. She told me to send it to the correct email at: fcra-npc@verisk.com.

i) 12.10.25 - 11/26 letter was resent to fcra-npc@verisk.com.

j) 12.15.25 - sent follow-up email to fcra-npc@verisk.com.

k) 12.15.25 - Melissa responded - reports are being mailed this week.

l) 12.29.25 - Reports rec'd via US mail.

m) 12.30.25 - email Verisk advising the documents received is incomplete.

n) 12.31.25 - Melissa acknowledged receipt of email and indicated Verisk was internally reviewing.

o) 1.5.26 - Mr. Wagner sent a follow-up email to Melissa regarding the requested documents.

p) 1.8.26 - Mr. Wagner sent a follow-up email to Melissa.

q) 1.9.26 - Verisk retains counsel at Orrick, Avery Turzanski, who emailed Mr. Wagner indicating they were assisting Verisk with request and requesting an additional two weeks to respond.

r) 1.15.26 - email to Turzanski requesting update.

s) 1.20.26 - follow-up email to Turzanski requesting update

t) 1.21.26 - Turzanski responded indicating they were working on the request and expect to respond by early next week

u) 2.26.26 – After the Frontline Underwriting Deposition, Turzanski sent a follow up email again producing generally nonresponsive documents.

46.     To date, neither Verisk, nor Verisk's counsel has responded to Mr. Wagner's request for his entire consumer file maintained by Verisk as required to be produced under 15 U.S.C. 1681g.

47.     In total, Mr. Wagner has submitted at least 13 requests to Verisk for the complete contents of his file.

48.     On January 26, 2026, Mr. Wagner was forced to take the deposition of Frontline's Corporate Representative for Underwriting without the benefit of Verisk's statutorily-required disclosure.

49.     In March 2026, The Circuit Court of Hillsborough County, Florida granted summary judgment in Frontline's favor regarding the Plaintiff's litigated insurance claim denial. The court held the Plaintiff had failed to produce evidence that Frontline had knowledge of his prior claims.  Had Verisk provided all of information in his credit file as requested, Mr. Wagner would have been able to show the court that Frontline was on notice of his claims through the numerous A-Plus reports they pulled from Verisk.

50.     Thus, Mr. Wagner has suffered concrete harm in the form of lost time, money, and the inability to property litigate his case, directly caused by Verisk's failure.

51.    Mr. Wagner has also suffered severe emotional distress and anxiety as a result of Verisk's failure to provide him with information o which he is legally entitled and which was necessary for his underlying litigation with Frontline.

52.    The Plaintiff was forced to hire undersigned counsel, and is seeking compensation for the associated attorney's fees and costs.

**COUNT I**
**VERISK'S WILLFUL VIOLATIONS OF THE**
**FCRA,15 U.S.C. § 1681g(a)**

53.    Plaintiff adopts and incorporates paragraphs 1 – 52 as if fully stated herein.

54.    Verisk violated **15 U.S.C. § 1681g** when it failed to produce any information contained in the Plaintiff's consumer file in response to his repeated requests for it.

55.    Verisk's repeated violations of this statute show that they acted willfully or with a reckless disregard.

56.    Verisk is therefore liable, pursuant to 15 U.S.C. § 1681n, for the greater of Plaintiff's actual damages and statutory damages not to exceed $1,000 *for each violation*, punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court to enter judgment against Verisk for:

a.    The greater of statutory damages of $1,000.00 per incident and Plaintiff's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A),

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) and,

d.    Such other relief that this Court deems just and proper.

## COUNT II
## <u>VERISK'S NEGLIGENT VIOLATIONS OF THE</u>
## <u>FCRA - 15 U.S.C. § 1681g</u>
**(Pled in the Alternative to Count I)**

57.    Plaintiff adopts and incorporates paragraphs 1 – 52 as if fully stated herein and pled in the alternative to Count I.

58.    Verisk violated **15 U.S.C. § 1681g** when it failed to produce any information contained in the Plaintiff's consumer file in response to his repeated requests for it.

59.    Verisk's conduct was negligent and exhibited a disregard for its duties under the FCRA, and its actions could easily be foreseen to cause harm to Plaintiff. Verisk's failure to comply with the FCRA caused harm to the Plaintiff as evidenced by the time and money wasted in the underlying insurance litigation.

60.    Verisk is therefore liable, pursuant to 15 U.S.C. § 1681o, for Plaintiff's actual damages, attorney's fees, and costs.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court to enter judgment against Verisk for:

a.    Plaintiff's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.    Such other relief as the court deems appropriate.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted on May 13, 2026, by:

*/s/ Thomas M. Bonan*
Thomas M. Bonan, Esq.
Florida Bar No.: 118103
**SERAPH LEGAL, P. A.**
TBonan@SeraphLegal.com
3505 East Frontage Road, Suite 145
Tampa, FL 33607
Tel: 813-567-1230
*Counsel for Plaintiff*