**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

ROBERT WAGNER,

Plaintiff,

v.

VERISK ANALYTICS, INC.,

Defendant.

Case No.: 8:26-cv-01695-WFJ-CPT

**DEFENDANT VERISK ANALYTICS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Verisk Analytics, Inc. ("Verisk") hereby moves to dismiss Plaintiff Robert Wagner's Complaint in its entirety without leave to amend under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........................................................................................6

BACKGROUND ........................................................................................8

I. When Plaintiff Sues in Unrelated Litigation to Force Frontline to Pay His Wind-Damage Claim, Frontline Argues It Was Entitled to Reject the Claim Because of the False Statement in Plaintiff's Application. ...........8

II. After Summary Judgment Briefing Is Complete, Plaintiff Requests and Receives His Consumer File From Verisk. ..........................................10

III. The Circuit Court Awards Summary Judgment to Frontline. .......................13

IV. Plaintiff Brings This Lawsuit Against Verisk, Claiming It Withheld Part of His Consumer File. ..........................................................................14

STANDARD OF REVIEW ..........................................................................15

ARGUMENT ............................................................................................16

I. Plaintiff Fails to Establish Personal Jurisdiction. ........................................16

II. Plaintiff Fails to State an FCRA Claim. .......................................................20

A. The Complaint does not adequately allege that Verisk withheld information in Plaintiff's consumer file. ...........................................20

B. The Complaint does not adequately allege that Verisk's conduct was willful or negligent. ......................................................................24

C. The Complaint does not adequately allege that Plaintiff suffered actual damages under § 1681o. .........................................................25

CONCLUSION ..........................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................10

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
552 F.3d 1324 (Fed. Cir. 2008)....................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................10

*BKR Glob., LLC v. Fourwinds Cap. Mgmt.*,
2009 WL 10664316 (M.D. Fla. Sept. 23, 2009)....................12

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)....................12

*Carmouche v. Tamborlee Mgmt., Inc.*,
789 F.3d 1201 (11th Cir. 2015)....................12

*Celestine v. Cap. One*,
741 F. App'x 712 (11th Cir. 2018)....................15

*Chapman v. Abbott Labs.*,
930 F. Supp. 2d 1321 (M.D. Fla. 2013)....................8

*Cobb v. Equifax Info Servs., LLC*,
2023 WL 2933349 (N.D. Ga. Mar. 9, 2023)....................13

*Cogswell v. Am. Transit Ins. Co.*,
282 Conn. 505, 923 A.2d 638 (2007)....................13

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....................11

*Geniva O'keefe v. Pick Five Imports, Inc.*,
2019 WL 13083614 (M.D. Fla. June 14, 2019)....................11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)....................11

*Harris v. Mexican Specialty Foods, Inc.*,
564 F.3d 1301 (11th Cir. 2009)....................18

*Harris v. Trans Union, LLC*,
197 F. Supp. 2d 200 (E.D. Pa. 2002) ........................................................ 13

*Hinkle v. Cont'l Motors, Inc.*,
268 F. Supp. 3d 1312 (M.D. Fla. 2017) ........................................ 9, 10, 14

*Hunt v. Erie Ins. Grp.*,
728 F.2d 1244 (9th Cir. 1984) ................................................. 12, 13, 14

*Int'l Shoe v. Washington*,
326 U.S. 310 (1945) ........................................................................... 11

*Lavandeira v. Tampa Police Dep't*
2020 WL 6545983 (M.D. Fla. Nov. 6, 2020) .............................................. 4

*Lockard v. Equifax, Inc.*,
163 F.3d 1259 (11th Cir. 1998) ............................................................ 13

*Maxcess, Inc. v. Lucent Techs., Inc.*,
433 F.3d 1337 (11th Cir. 2005) .............................................................. 4

*Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*,
702 F.3d 1312 (11th Cir. 2012) ............................................................ 18

*Muhammad v. Gap Inc.*,
2025 WL 1836657 (S.D. Ohio July 3, 2025) ............................................ 13

*Papasan v. Allain*,
478 U.S. 265 (1986) ........................................................................... 10

*Rowe v. Gary, Williams, Parteni, Watson & Gary, P.L.L.C.*,
723 F. App'x 871 (11th Cir. 2018) ........................................................ 11

*Scott v. Experian Info. Sols., Inc.*,
2018 WL 3360754 (S.D. Fla. June 29, 2018) ................................ 2, 14, 15

*Sokol v. TransUnion, LLC*,
2022 WL 797017 (S.D. Fla. Mar. 16, 2022) ............................................ 19

*Stroud v. Bank of Am.*,
886 F. Supp. 2d 1308 (S.D. Fla. 2012) .................................................. 20

*United Techs. Corp. v. Mazer*,
556 F.3d 1260 (11th Cir. 2009) ............................................................ 10

*Walden v. Fiore*,
571 U.S. 277 (2014) ........................................................................... 12

*Waterline Villas & Marina Condo Ass'n v. Wright Nat'l Flood Ins. Co.*,
2026 WL 1993304 (M.D. Fla. July 10, 2026) ............................................. 7

**Statutes**

15 U.S.C. § 1681a(f) ....................5
15 U.S.C. § 1681o ....................14, 18, 20
15 U.S.C. § 1681o(a) ....................20
15 U.S.C. § 1681g ....................*passim*
15 U.S.C. §1681g(a) ....................16
15 U.S.C. § 1681g(a)(1)-(2) ....................6
15 U.S.C. § 1681g(a)(3)(A)(ii) ....................6
Fla. Stat. Ann. § 627.409(1)(a) ....................4
Fla. Stat. § 48.193(1) ....................12
Fla. Stat. § 48.193(2) ....................11

## INTRODUCTION

Verisk provided Plaintiff with all the information in his consumer file as required by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681g, and the Complaint offers no factual support whatsoever for Plaintiff's speculation that Verisk retained but inexplicably withheld additional information in the consumer file. In urging otherwise, Plaintiff fundamentally misconstrues the FCRA's scope and purpose. He also seeks to bring claims in a Court that lacks personal jurisdiction over Verisk, an out-of-state corporation that merely responded to Plaintiff's FCRA request by disclosing information as required by the statute—conduct that falls far short of purposeful availment.

The reality is that this lawsuit is an attempt to shift blame onto Verisk for an unfavorable judgment Plaintiff received in an insurance policy dispute litigated in Hillsborough County Circuit Court ("Circuit Court").[1] Verisk had nothing to do with that dispute, which Plaintiff lost because of an undisputedly false statement in his own insurance application: The application asserted he had made no other insurance claims in the previous five years, when the actual number was ***sixteen***. The only connection between the two cases is that after Plaintiff's false statement emerged in the Circuit Court litigation, Plaintiff belatedly submitted an FCRA request to Verisk (several months ***after*** summary judgment briefing had been

[1] Plaintiff noticed the Circuit Court proceeding as a related case. *See* Dkt. 11.

completed) in a longshot bid to drum up evidence that his insurer ***independently*** knew about the sixteen claims his application omitted. In particular, it would seem Plaintiff hoped that his current consumer file would contain copies of years-old Automobile-Property Loss Underwriting Service ("A-PLUS") reports provided to his insurer—and that those reports would list all sixteen claims at issue. What Plaintiff fails to appreciate is that the FCRA does not require retention of consumer reports for any length of time, let alone nearly a decade. Not surprisingly, Verisk's consumer file for Plaintiff did not contain copies of years-old A-PLUS reports.

Plaintiff now baselessly contends that Verisk's consumer file must have contained those copies, even though the FCRA does not require their retention, and that Verisk must have willfully or negligently withheld them. Even if this Court had personal jurisdiction over Verisk—which it does not—those "[c]onclusory allegations" fail to allege any specific facts plausibly supporting Plaintiff's bald assertion that "information w[as] missing from Defendants' disclosures," and his claims should be dismissed on that ground alone. *Scott v. Experian Info. Sols., Inc.*, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) (dismissing similarly conclusory FCRA claims).

Plaintiff likewise fails to plead facts showing that Verisk withheld any information willfully or negligently. To the contrary: His Complaint acknowledges that Verisk investigated and responded to Plaintiff's baseless follow-up requests to

check his file again, including by hiring outside counsel to ensure FCRA compliance. The only state of mind those allegations plausibly establish is thoroughness—not willful or negligent disregard for FCRA obligations. On top of that, Plaintiff separately fails to plead the actual damages required to recover for negligent withholding.

For all of those reasons, the Court should dismiss this misguided lawsuit in its entirety with prejudice.

## BACKGROUND

Plaintiff strains to connect his FCRA claims against Verisk to his unrelated dispute with his insurer, which he lost because his insurance application undisputedly misrepresented his claim history. Plaintiff's attempt to shift the blame for that loss onto Verisk is entirely unsubstantiated and betrays a fundamental misunderstanding of the FCRA's requirements. Nonetheless, Verisk summarizes Plaintiff's prior litigation here to clarify for the Court how tangential it is to his FCRA claims.

### I. When Plaintiff Sues in Unrelated Litigation to Force Frontline to Pay His Wind-Damage Claim, Frontline Argues It Was Entitled to Reject the Claim Because of the False Statement in Plaintiff's Application.

Plaintiff submitted his application for homeowner's insurance to Frontline Insurance ("Frontline") in 2016. Plaintiff was required to specify "any losses, whether or not paid by insurance, during the last five years, at this or any other

location," including losses subject to insurance claims. Req. for J. Not. ("RJN") Ex. A, at 6.[2] The Complaint vaguely mentions that when Plaintiff applied, he "had made multiple prior insurance claims within the last five years." Compl. ¶ 19. The actual number, as already determined by the Circuit Court, is ***sixteen*** claims, "[m]any" of which were "the subject of lawsuits." RJN Ex. A, at 6. But Plaintiff's application falsely stated there were none. Compl. ¶ 20.[3]

Several years later, in 2022, Plaintiff "made a windstorm roof claim on his Frontline insurance policy." *Id.* ¶ 30. As the Circuit Court noted in its factual findings, Frontline denied the claim as outside the "coverage" of Plaintiff's policy. RJN Ex. A, at 6. Plaintiff then filed his Circuit Court lawsuit to compel Frontline to pay the claim. *Id.* Frontline conducted an additional investigation and uncovered

---

[2] Verisk has filed an accompanying Request for Judicial Notice of the summary judgment briefing and order in the Circuit Court and cites those documents to establish facts regarding the arguments presented and ruling issued in that prior proceeding. *See Lavandeira v. Tampa Police Dep't*, 2020 WL 6545983, at *10 (M.D. Fla. Nov. 6, 2020) ("On a motion to dismiss, the court may take judicial notice of a fact outside of the pleading 'provided that it is central to the plaintiff's claims and is undisputed in terms of authenticity.'" (quoting *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005)); *Chapman v. Abbott Labs.*, 930 F. Supp. 2d 1321, 1323 (M.D. Fla. 2013) ("If a court takes judicial notice of documents pertinent to a motion to dismiss, it need not convert the motion to dismiss into a motion for summary judgment.").

[3] The Complaint alleges that the error originated with an insurance "agent/provider" that initially prepared the application, *id.*, but even if that were true, Plaintiff previously admitted in the Circuit Court that he reviewed and signed the application. RJN Ex. A, at 5.

Plaintiff's sixteen prior claims, *id.*, then added a new basis for claim denial: Plaintiff's application contained a "material misrepresentation," which defeats an insurance claim under Fla. Stat. Ann. § 627.409(1)(a). RJN Ex. B, at 17-18.

## II. After Summary Judgment Briefing Is Complete, Plaintiff Requests and Receives His Consumer File From Verisk.

Plaintiff was left searching for a way to excuse the false statement in his application. In particular, he speculated that if Frontline had received an A-PLUS report that listed the sixteen claims his application omitted, that might show Frontline ***independently*** knew about the claims such that his false statement was immaterial. *See* Compl. ¶¶ 12-14, 20-23; RJN Ex. A, at 5. But when Plaintiff "propounded discovery to Frontline requesting a copy of the February 4, 2016 A-PLUS Report" it consulted when assessing Plaintiff's application, he learned that Frontline "did not maintain a copy of the A-Plus Report." *Id.* ¶¶ 39-40. Frontline then submitted sworn testimony that the 2016 report ***had not disclosed*** any of Plaintiff's previous claims (which was why, per company policy, Frontline had not saved a copy). *Id.* ¶ 27. The parties then submitted summary judgment briefing on that record. *See* RJN Exs. B-D.

Months after summary judgment briefing was complete, Plaintiff belatedly turned to non-party Verisk. Rather than propound a formal subpoena, however, he submitted a request for his consumer file under the FCRA. *See* Compl. ¶ 45. That statute defines a "consumer reporting agency" as an entity that "regularly engages

in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f). The consumer's "file," in turn, "means all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." *Id.* § 1681a(g). The FCRA then imposes a corresponding disclosure obligation: A "consumer reporting agency shall, upon request … clearly and accurately disclose to the consumer … [a]ll information in the consumer's file ***at the time of the request***," along with the "sources of the information." *Id.* § 1681g(a)(1)-(2) (emphasis added).

Notably, the FCRA does not require a consumer reporting agency to retain information in perpetuity. Nor does it require a consumer reporting agency to record or retain for ***any*** length of time (let alone many years) copies of "reports" it may have provided to third parties, as opposed to the underlying data it would use to populate such a report. When the FCRA addresses past reports, it instead requires a consumer reporting agency to retain, and disclose upon request, records of "each ***person*** … that procured a consumer report … ***during the 1-year period preceding the date on which the request is made***." *Id.* § 1681g(a)(3)(A)(ii) (emphasis added). Put simply, the FCRA gives consumers a way to check, and potentially correct, the information a consumer reporting agency possesses about them in order to ensure

future reports will not be inaccurate, along with a list of third parties that recently requested reports. But the statute does not guarantee consumers the right to review copies of years-old reports or require consumer reporting agencies to maintain information indefinitely.

Invoking the FCRA, Plaintiff sent Verisk a request "for a complete copy of all consumer data that Verisk maintains on [Plaintiff]." Compl. ¶ 41. Verisk responded with Plaintiff's complete consumer file, which did not contain years-old A-PLUS reports. Plaintiff then sent follow-up requests for information to Verisk, insisting that his consumer file must include additional documents that would be useful to him as evidence against Frontline (even though summary judgment briefing was already complete) and requesting other types of information outside the FCRA's scope. *See id.* ¶¶ 45-46. Verisk ultimately hired outside counsel to address Plaintiff's follow-up requests and ensure statutory compliance. *See id.* ¶ 45. Consistent with its FCRA obligations, Verisk's counsel sent Plaintiff a final production that included a recently generated "A-Plus Report that included prior claims," but no years-old reports. *Id.* ¶ 42; *see* Ex. A, Feb. 26, 2026 Turzanski email to Plaintiff's counsel.[4] Plaintiff never responded to that production or sought formal

[4] The Complaint incorporates the Turzanski email by reference, relying on it as part of the alleged "timeline of the relevant communications." Compl. ¶ 45; *see Waterline Villas & Marina Condo Ass'n v. Wright Nat'l Flood Ins. Co.*, 2026 WL 1993304, at *3 (M.D. Fla. July 10, 2026) (complaint incorporates documents where it "directly references" them, they "are central to the complaint," and plaintiff "has

discovery or any court-ordered remedy for purported nondisclosure in the course of the Frontline litigation. Indeed, after the February 26, 2026 response from Verisk's counsel, Verisk heard nothing further from Plaintiff until the filing of this lawsuit.

## III. The Circuit Court Awards Summary Judgment to Frontline.

The Circuit Court granted summary judgment in Frontline's favor. It ruled that "Plaintiff's failure to disclose sixteen prior claims" was "clearly false" and "'so gross that anyone would know they are material.'" RJN Ex. A, at 13-14 (quoting *Singer v. Nationwide Mut. Fire Ins. Co.*, 512 So. 2d 1125, 1128 (Fla. Dist. Ct. App. (1987)). The Circuit Court further ruled that "the A-Plus report" Frontline consulted in 2016 "revealed no other claims," which explained why "it was not manually downloaded, saved, or printed by Frontline." *Id.* at 14, 17. The Circuit Court then added: "Furthermore, the A-Plus report has no bearing under the facts and controlling law" in any event, as "Frontline was entitled to rely on the Application without further inquiry." *Id.* at 18. In short, "[t]he Plaintiff's misrepresentation independently affected Frontline's willingness to accept the risk and issue the Policy." *Id.* (finding that "Plaintiff's material misrepresentation bars recovery under the Policy").

not disputed their authenticity" (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005))).

### IV. Plaintiff Brings This Lawsuit Against Verisk, Claiming It Withheld Part of His Consumer File.

Plaintiff is seeking rehearing in the Circuit Court in his litigation against Frontline and has also noticed an appeal. *See* RJN Ex. E-F. Even as that litigation remains ongoing, however, Plaintiff has sued Verisk in a transparent attempt to recover some measure of damages in connection with his insurance dispute with Frontline. The Complaint claims that Verisk violated the FCRA by failing to produce Plaintiff's "entire consumer file," based on speculative "information and belief" that (1) years ago, Frontline received A-PLUS reports that listed the sixteen claims Plaintiff's insurance application had omitted, and (2) Verisk recorded and retained copies of those reports for nearly a decade, even though the FCRA imposes no such recordkeeping obligation; and (3) Verisk willfully or negligently declined to disclose them. *See* Compl. ¶ 46. The Complaint vaguely asserts that Verisk's supposed FCRA violation caused him "concrete harm in the form of lost time, money, and the inability to properly litigate his case" against Frontline. *Id.* ¶ 50.

Notably, the Complaint never alleges that Plaintiff's claim against Frontline otherwise would have prevailed. At most, it asserts Plaintiff "would have been able to show the court that Frontline was on notice of his claims through the numerous A-Plus reports they pulled from Verisk"—just one issue in the overall contract dispute between Plaintiff and Frontline. *Id.* ¶ 49. Nonetheless, the Complaint states that Plaintiff's "harm" may be measured "by the time and money wasted in the

underlying insurance litigation." *Id.* ¶ 59. Plaintiff also allegedly "suffered severe emotional distress and anxiety as a result of Verisk's failure to provide him with information [t]o which he is legally entitled and which was necessary for his underlying litigation with Frontline." *Id.* ¶ 51.

## STANDARD OF REVIEW

"Motions to dismiss for lack of personal jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(2)." *Hinkle v. Cont'l Motors, Inc.*, 268 F. Supp. 3d 1312, 1318 (M.D. Fla. 2017), *aff'd sub nom. Hinkle v. Cirrus Design Corp.*, 775 F. App'x 545 (11th Cir. 2019). "A court must dismiss an action against a defendant over which it lacks personal jurisdiction." *Id.* "To withstand a motion to dismiss, a plaintiff must plead sufficient facts to establish a prima facie case of jurisdiction over the non-resident defendant." *Id.*

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must be dismissed where it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545. A court

cannot assume a plaintiff can prove facts he has not alleged. *Id.* at 563 n.8 (quoting *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983)). Legal conclusions, even if couched as factual allegations, need not be accepted as true. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## ARGUMENT

### I. Plaintiff Fails to Establish Personal Jurisdiction.

As a threshold matter, Plaintiff has failed to carry his "initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction" over Verisk. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). To carry that burden, Plaintiff would need to allege facts plausibly establishing either general or specific jurisdiction. *See Rowe v. Gary, Williams, Parteni, Watson & Gary, P.L.L.C.*, 723 F. App'x 871, 874-75 (11th Cir. 2018). The Complaint does neither.

To establish general jurisdiction, Plaintiff would need to identify connections with Florida "so 'continuous and systematic' as to render [Verisk] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 317 (1945)); *see* Fla. Stat. § 48.193(2). The Complaint falls far short. It asserts that Verisk is a "New Jersey corporation" with its principal place of business in New Jersey. Compl. ¶ 10. However, absent exceptional circumstances not present here, a corporate

defendant is only "at home" in a forum if it is either incorporated or has its principal place of business there. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). And the Complaint similarly alleges no continuous or systematic connections to Florida sufficient to render Verisk "at home" in Florida. *Goodyear*, 564 U.S. at 919.[5]

To establish specific jurisdiction, in turn, Plaintiff would need to show both that Verisk purposefully availed itself of the privilege of conducting business in Florida and that his claims "arise out of or relate to" that availment. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015); *see* Fla. Stat. § 48.193(1). This constitutional test draws a critical distinction between affirmative and merely reactive conduct. Purposeful availment must reflect the defendant's ***affirmative decision*** to target Florida's market and benefit from its laws. The "unilateral activity of another party or a third person" is not enough. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes

---

[5] All of that is equally true for Verisk's subsidiary, Insurance Services Office, Inc. ("ISO"), which provides A-PLUS reports. ISO is incorporated in Delaware, and its principal place of business is New Jersey. *See* RJN Ex. G; *id.* Ex. H, at 2; *Geniva O'keefe v. Pick Five Imports, Inc.*, 2019 WL 13083614, at *1 (M.D. Fla. June 14, 2019) (taking judicial notice of "principal place of business" and "corporate headquarters").

by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Burger King*, 471 U.S. at 475).

In particular, where a plaintiff contacts an out-of-state defendant and demands a response, the defendant does not purposefully avail itself of the plaintiff's home state merely by replying with "communications into that forum." *Hunt v. Erie Ins. Grp.*, 728 F.2d 1244, 1248 (9th Cir. 1984); *see also BKR Glob., LLC v. Fourwinds Cap. Mgmt.*, 2009 WL 10664316, at *2 (M.D. Fla. Sept. 23, 2009) ("sending letters to the forum state, making telephone calls, or exchanging information by other means of communication generally does not constitute purposeful availment of the state's laws"). In those circumstances, "[t]he mere fact that [the defendant] communicated with [the plaintiff] in the state, and may have committed a tort in the exchange of correspondence, does not show that [the defendant] purposefully availed itself of the privilege of conducting business" in the plaintiff's state, precisely because the plaintiff's conduct "forced [the defendant] to send mail to that State concerning her claim." *Hunt*, 728 F.2d at 1248; *see, e.g.*, *Harris v. Trans Union, LLC*, 197 F. Supp. 2d 200, 205 (E.D. Pa. 2002) (defendant did not avail itself of forum state where resident "initiated the request for information" and defendant "simply sent the information to the location requested"); *Cogswell v. Am. Transit Ins. Co.*, 282 Conn. 505, 530 (2007) (no purposeful availment where "[t]he only acts

that the defendant directed at this state were in response to [plaintiff] filing a claim with the defendant").[6]

Plaintiff has failed to establish specific jurisdiction for the same reason. The Complaint alleges that Verisk sent information to Plaintiff in Florida in response to his FCRA request for his consumer file, and that the information was incomplete in a way that violated the statute. Just as in *Hunt*, however, the "mere fact" that Verisk "communicated" with Plaintiff while he was in Florida, and allegedly violated the law "in the exchange of correspondence," is not a ground for haling Verisk into court in this jurisdiction. 728 F.2d at 1248. It was Plaintiff's unilateral decision to demand his consumer file while in Florida, and not any affirmative decision by Verisk, that "forced [Verisk] to send mail to that State concerning [his] claim." *Id.* Indeed, that is particularly true in this case, where Verisk was ***statutorily obligated*** by the FCRA to send file disclosures to consumers upon request. Plaintiff makes no other allegations connecting Verisk to Florida and so has failed to carry his burden to establish personal jurisdiction. *See Hinkle*, 268 F. Supp. 3d at 1318.

---

[6] For similar reasons, the fact that an out-of-state defendant "electronically furnish[ed] information" about a consumer to a third party within the forum state is "too tenuous" of a "connection" "to establish purposeful availment." *Cobb v. Equifax Info Servs., LLC*, 2023 WL 2933349, at *7 (N.D. Ga. Mar. 9, 2023); *see Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265-66 (11th Cir. 1998); *Muhammad v. Gap Inc.*, 2025 WL 1836657, at *10 (S.D. Ohio July 3, 2025) (no personal jurisdiction where "Verisk published an ISO ClaimSearch report, which *other* Defendants then accessed and disseminated" in the forum state, making Verisk "akin to operating a passive website").

## II. Plaintiff Fails to State an FCRA Claim.

Even if this Court had jurisdiction, Plaintiff has not adequately pled an FCRA violation, for several independent reasons.

### A. The Complaint does not adequately allege that Verisk withheld information in Plaintiff's consumer file.

The Complaint alleges that Verisk is a consumer reporting agency. Compl. ¶ 13. And it attempts to plead an FCRA violation by asserting that Verisk failed to disclose the "entire consumer file" upon Plaintiff's request. *Id.* ¶ 46. To state such a claim, however, Plaintiff must do more than assert "upon information and belief that … types of information were missing from Defendants' disclosures." *Scott*, 2018 WL 3360754, at *6. He must substantiate that claim by specifying "what information is actually missing from what he received" and alleging "specific facts"—not just conclusory speculation—that "lead him to accuse" Verisk of withholding that information. *Id.* at *7; *see also Celestine v. Cap. One*, 741 F. App'x 712, 715 (11th Cir. 2018) (affirming dismissal of FCRA claim "unsupported by any plausible facts").

The Complaint is precisely the sort of deficient pleading that the Court in *Scott* soundly dismissed. Plaintiff states in conclusory fashion that "[u]pon information and belief, [his] prior loss information was contained within the February 4, 2016, and yearly renewal, A-Plus Reports that Frontline ordered from Verisk." Compl. ¶ 33. In other words, Plaintiff asserts with no support that (1) Verisk must have

recorded and retained A-PLUS reports provided to Frontline nearly a decade earlier, such that they were part of Plaintiff's consumer file when he submitted his FCRA request, and (2) those A-PLUS reports listed all sixteen prior claims omitted from his insurance application. *See id.* ¶ 46. Each step in that chain is entirely unsubstantiated by well-pled facts.

**No facts showing Verisk recorded and retained copies of the years-old A-PLUS reports Plaintiff insists Frontline consulted a decade earlier.** To begin with, Plaintiff pleads no facts indicating Verisk recorded and retained copies of years-old A-PLUS reports—the crux of the alleged FCRA violation. This is where Plaintiff's misunderstanding of the statute rears its head. The FCRA ***does not require*** a consumer reporting agency to save copies of past reports at all, let alone for nearly a decade. The FCRA instead requires that the consumer reporting agency disclose all information in the consumer file at the time of the request, along with a list of third parties that received past reports within the previous year. *See* 15 U.S.C. § 1681g(a). Put simply, the FCRA is not a discovery device designed to give litigants access to decade-old reports as evidence. To the extent the Complaint implies Verisk must have retained copies of past reports because it is regulated by the FCRA, it simply gets the statute wrong. Plaintiff may be disappointed that his misguided use of an FCRA request for discovery purposes did not yield the evidence he hoped to find, but that is not a plausible basis for alleging that Verisk violated the

FCRA by withholding information in his file—particularly after Verisk hired outside counsel specifically to ensure statutory compliance. *See* Ex. A; Compl. ¶ 45.

**No facts showing existence of years-old A-PLUS reports listing Plaintiff's prior claims.** On top of that, Plaintiff alleges no facts indicating that the types of A-PLUS reports he claims were withheld—those that disclosed to Frontline ***all sixteen claims*** omitted from Plaintiff's application before the Circuit Court lawsuit—even existed in the first place. The Complaint attempts to plead this necessary point by asserting that ***every*** A-PLUS report ***always*** "contain[s] some information in the credit file relating to prior property insurance claims," such that "no person accessing an A-Plus report can claim that they were not put on notice of prior property insurance claims by a consumer." Compl. ¶¶ 16-17. But that assertion is entirely conclusory in its own right. Indeed, it is contradicted by the very allegations Plaintiff offers as ostensible support.

The Complaint first points to testimony from a Frontline witness in the Circuit Court action that ***Frontline*** never "***downloaded***" the 2016 A-PLUS report regarding Plaintiff because its "process" was to save A-PLUS reports "***only*** if there was [sic] prior losses that did pull up on the report." Compl. ¶ 27 (emphasis added). Plaintiff misconstrues this testimony as somehow suggesting A-PLUS reports could not exist unless they listed a consumer's prior insurance claims. But the testimony actually establishes just the opposite. Frontline's practice of downloading A-PLUS reports

only if they reported prior losses confirms that A-PLUS reports could lack such information. Otherwise, the distinction Frontline drew would make no sense.

The Complaint fares no better in pointing (in footnote 1) to a webpage offering guidance on reading A-PLUS reports. *See* "How to Read an A-Plus Property Report," https://www.cwico.com/app/HOApp/HelperPages/DOC_How_to_Read_an_A_PLUS_Property_Report.pdf. That webpage explains that "***[i]f*** there are claims" in the A-PLUS records, the corresponding A-PLUS report will appear "similar to the one shown here." *Id.* (emphasis added). The webpage then provides a template with annotations to aid the reader in navigating claim information. *Id.* Again, Plaintiff appears to misunderstand that as suggesting an A-PLUS report could not exist if it did not list prior claims. The webpage says nothing of the kind.

Plaintiff's suggestion that every A-PLUS report always contains previous claim information is not merely conclusory; it is also procedurally foreclosed. Plaintiff already litigated this exact issue before the Circuit Court, disputing Frontline's claim to have received a 2016 A-PLUS report regarding Plaintiff with no information about previous claims. *See* RJN Ex. C, at 6; *id.* Ex. D, at 3. The Circuit Court decided that issue against Plaintiff, ruling that Frontline ***had*** received a 2016 A-PLUSs report containing no claim information. *See id.* Ex. A, at 17. The doctrine of claim preclusion thus "bars" Plaintiff from contending otherwise in this "successive litigation," even though "the issue" now "recurs in the context of a

different claim." *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1318 (11th Cir. 2012) (quotation marks omitted).

The Complaint's failure to plead an incomplete consumer file disclosure compels dismissal of Plaintiff's § 1681g claims. *See* Compl. ¶¶ 54, 58.

**B. The Complaint does not adequately allege that Verisk's conduct was willful or negligent.**

Although the Court need go no further, the Complaint separately fails to plead that Verisk's purported failure to disclose all information in Plaintiff's consumer file was willful, as § 1681n separately requires, or negligent, as § 1681o requires. *See Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1310 (11th Cir. 2009) ("A violation is 'willful' for the purposes of the FCRA if the defendant violates the terms of the Act with knowledge or reckless disregard for the law.").

The Complaint alleges willfulness "only in the most conclusory of terms." *Sokol v. TransUnion, LLC*, 2022 WL 797017, at *5 (S.D. Fla. Mar. 16, 2022) (dismissing FCRA claim on that basis). In fact, the concept appears in just a single line of the Complaint, where Plaintiff alleges without elaboration that "Verisk's repeated violations of this statute show that they acted willfully or with a reckless disregard." Compl. ¶ 55. Even if repeated violations might plausibly demonstrate willfulness, however, the Complaint alleges no such thing. It pleads merely that Plaintiff repeatedly ***followed up*** with Verisk to complain about the purported incompleteness of its disclosure, and that Verisk responded by double checking its

records and hiring outside counsel to ensure its production was exhaustive. *See id.* ¶ 45 (noting that Verisk responded to Plaintiff's follow-up communications and ultimately "retain[ed] counsel at Orrick, Avery Turzanski, who emailed Mr. Wagner indicating they were assisting Verisk with request"). Nothing about those allegations plausibly establishes Verisk willfully withheld information it knew to be part of Plaintiff's consumer file, which means the Complaint's "allegations are wholly insufficient to show that [any] error went beyond mere carelessness or negligence." *Sokol*, 2022 WL 797017, at *5.

Indeed, the Complaint also fails to plausibly allege negligence. Plaintiff pleads that Verisk re-checked its records at his request and relied on outside counsel to ensure FCRA compliance. That shows thoroughness, not negligence.

### C. The Complaint does not adequately allege that Plaintiff suffered actual damages under § 1681o.

Finally, the Complaint fails to plead the damages element of Plaintiff's § 1681o claim, which requires a showing of "actual damages." 15 U.S.C. § 1681o(a)(1); *see Stroud v. Bank of Am.*, 886 F. Supp. 2d 1308, 1325 (S.D. Fla. 2012) ("It is well-established that actual damages are an element of an FCRA claim."). Plaintiff urges that he suffered actual damages because Verisk's purportedly incomplete disclosure left him unable to "proper[l]y litigate his case" in the Circuit Court, causing him "lost time" and "money" and accompanying "emotional distress." Compl. ¶¶ 50-51.

That damages theory is not legally viable. The Circuit Court dismissed Plaintiff's contract suit against Frontline because it found that "Plaintiff's misrepresentation independently affected Frontline's willingness to accept the risk and issue the Policy," which "bars recovery under the Policy." RJN Ex. A, at 18. And it expressly added that "the A-Plus report has no bearing under the facts and controlling law" because "Frontline was entitled to rely on the Application without further inquiry." *Id.* Given the Circuit Court's stated rationale—and the fact that Plaintiff ***did not even submit his request to Verisk until summary judgment briefing was complete***—the scope of Verisk's A-PLUS report disclosure could not have contributed to Plaintiff's summary judgment loss. Plaintiff may well have wasted time and money pursuing his claim against Frontline, but only because he had impermissibly obtained his insurance policy through a false statement—not because of any wrongdoing by Verisk. Plaintiff should not now be permitted to waste this Court's and Verisk's resources on serial, unfounded litigation.[7]

## **CONCLUSION**

The Court should dismiss the Complaint without leave to amend.

[7] Moreover, Plaintiff (and the Court) could not possibly assess the impact of Verisk's conduct (if any) on his capacity to "litigate properly" in Florida at this stage. Plaintiff is currently pursuing rehearing in the Circuit Court and has separately noticed an appeal, all of which could fundamentally alter the course of the case. Plaintiff's actual damages allegations are thus too speculative to be cognizable.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned hereby certifies that counsel for Verisk has conferred with Plaintiff's counsel via email regarding the relief requested herein and Plaintiff opposes the Motion.

Dated: August 17, 2026

Respectfully submitted,

/s/ *Diana Marie Fassbender*

Diana Marie Fassbender
Florida Bar No. 17095
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
dszego@orrick.com
215 NW 24th Street
Suite 200
Miami, FL 33127
Telephone: (202) 339-8533
Facsimile: (202) 339-8500

*Counsel for Defendant Verisk Analytics, Inc.*

# CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 17, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

*/s/ Diana Marie Fassbender*
Diana Marie Fassbender
Florida Bar No. 17095
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
dszego@orrick.com
215 NW 24th Street
Suite 200
Miami, FL 33127
Telephone: (202) 339-8533
Facsimile: (202) 339-8500

*Counsel for Defendant Verisk Analytics, Inc.*