**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| **ROBERT WAGNER,**<br>*individually and on behalf of a class of similarly situated persons,*<br><br>*Plaintiff,*<br><br>v.<br><br>**VERISK ANALYTICS, INC.,**<br><br>*Defendant.* | Case No.: 8:26-cv-01695-WFJ-CPT<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, ROBERT WAGNER ("Mr. Wagner" or "Plaintiff"), on behalf of himself and all similarly situated individuals, by and through his undersigned counsel, files this First Amended Class Action Complaint against Defendant, VERISK ANALYTICS, INC. ("Verisk") and states as follows:

## PRELIMINARY STATEMENT

1. This is an action for damages brought by Mr. Wagner, individually and as the proposed representative of the nationwide classes of similarly situated consumers defined below, against Verisk for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

2. Congress enacted the FCRA to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is

fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b).

3. Verisk, acting through its Verisk Underwriting Solutions division ("VUS"), its subsidiary Insurance Services Office, Inc. ("ISO"), and its affiliate Verisk Insurance Services Inc. (collectively, and as further alleged below, the "Verisk Enterprise"), is a consumer reporting agency that produces and sells consumer reports containing information related to insurance claims, including Automobile-Property Loss Underwriting Service ("A-PLUS") Property and Auto Loss History Reports and Coverage Verifier reports.[1]

4. As a consumer reporting agency, Verisk is required by law, upon request, to provide the consumer a clear and accurate disclosure of all information in Verisk's file on the consumer. 15 U.S.C. § 1681g(a).

5. 15 U.S.C. § 1681a(g) states that "The term 'file', when used in connection with information on any consumer, means all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."

6. Verisk failed to do so here. When Mr. Wagner requested his complete consumer file, Verisk withheld responsive records for more than three months and omitted records that existed in Mr. Wagner's file at the time of his request. Verisk's

[1] See https://www.verisk.com/products/claimsearch/ and also https://www.insuranceandtechguide.com/company/600988/products/177365/iso-s-automobile-property-loss-underwriting-service-a-plustm

treatment of Mr. Wagner's request reflects a pattern and practice affecting other consumers who have sought disclosure of their consumer files from Verisk under 15 U.S.C. § 1681g(a) and who have experienced materially similar delay and incompleteness.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the FCRA, and pursuant to 15 U.S.C. § 1681p.

8. This Court also has subject matter jurisdiction over the Class claims pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a class action in which, on information and belief: (a) the proposed Classes contain 100 or more members; (b) at least one member of the proposed Classes is a citizen of a state different from Verisk's state of citizenship; and (c) the aggregate amount in controversy, exclusive of interest and costs, exceeds $5,000,000, taking into account the statutory damages available under 15 U.S.C. § 1681n(a)(1)(A) for each Class member.

9. This Court has personal jurisdiction over Verisk because, as alleged in detail below, Verisk and the Verisk Enterprise regularly and continuously conduct business in the State of Florida by interacting, as an ongoing part of their business, with numerous Florida-licensed insurance companies to furnish consumer reports concerning Florida residents and Florida risk addresses, and because Mr. Wagner's

claims arise out of and relate to that Florida business activity. See Fla. Stat. § 48.193(1)(a).

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because Mr. Wagner resides in this District, a substantial part of the events giving rise to this action occurred in this District, and Mr. Wagner suffered the effects of Verisk's conduct in this District.

## PARTIES

### Mr. Wagner

11. Mr. Wagner is a natural person who at all relevant times has resided in Hillsborough County, Florida, within this District.

12. Mr. Wagner is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

13. Mr. Wagner brings this action individually and as the proposed representative of the Classes defined in the Class Allegations section below.

### Verisk and the Verisk Enterprise

14. Verisk Analytics, Inc. is a Delaware corporation with its principal place of business at 545 Washington Blvd., Jersey City, New Jersey 07310.

15. Verisk Analytics, Inc.'s Delaware registered agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

16. Verisk is a nationwide consumer reporting agency within the meaning of 15 U.S.C. § 1681a(f), in that it regularly engages, in whole or in part, in the practice of

assembling or evaluating information on consumers for the purpose of furnishing consumer reports to third parties, using the mail and instrumentalities of interstate commerce for that purpose.

17. Verisk conducts this consumer reporting business through operating divisions and affiliated entities, including but not limited to: (a) VUS, which responded to Mr. Wagner's FCRA request "on behalf of" Verisk; (b) ISO, which generated the A-PLUS Auto Loss History and Coverage Verifier reports concerning Mr. Wagner; and (c) Verisk Insurance Services Inc., identified as the "Sponsoring Company" and "Ordering Company" on the Coverage Verifier report Verisk produced concerning Mr. Wagner.

18. On information and belief, VUS, ISO, and Verisk Insurance Services Inc. are wholly owned and/or controlled by Verisk, share common ownership, common mailing and processing addresses (including P.O. Box 5404, Mt. Laurel, New Jersey 08054), a common consumer-facing "Consumer Inquiry Center" and toll-free telephone number (1-800-709-8842), and common outside counsel, and operate as a single, integrated consumer reporting enterprise under the unified "Verisk" brand.

19. Verisk does not attempt to maintain the separateness of these entities in its own dealings with consumers. Verisk's correspondence to Mr. Wagner and his counsel, including the letters dated December 17, 2025 and February 26, 2026, refers to the entity responding to Mr. Wagner's FCRA request collectively and interchangeably as "Verisk," without distinguishing among Verisk Analytics, Inc., VUS, ISO, or Verisk Insurance Services Inc.

20. Verisk also lists numerous "products" on its website, including ISO Claim Search. On Claim Search's sub-website, much of the contact information directs people to email verisksupport@verisk.com.[2]

21. Verisk Analytics, Inc. directs, controls, and ratifies the consumer reporting conduct of VUS, ISO, and Verisk Insurance Services Inc. described herein, such that each acted as the agent and/or instrumentality of Verisk Analytics, Inc., and Verisk Analytics, Inc. is directly and/or vicariously liable for the conduct of the Verisk Enterprise alleged herein.

## CLASS ALLEGATIONS

22. Plaintiff brings this action on behalf of himself and all others similarly situated.

23. Class Definition. Mr. Wagner brings this action on behalf of himself and the following two proposed nationwide classes (together, the "Classes"):

> **The Supplemental Disclosure Class**: All natural persons who submitted a written request to Verisk, or to any entity within the Verisk Enterprise, for disclosure of their complete consumer file under 15 U.S.C. § 1681g(a); whose initial substantive response from Verisk issued within the five years preceding the filing of this Complaint; and to whom Verisk thereafter provided, within the two years preceding the filing of this Complaint, one or more supplemental

[2] https://claimsearch.iso.com/reskin/help.asp

disclosures containing information that existed in that consumer's file as of the date of the request but was omitted from that initial substantive response.

**The Undisclosed Omission Class**: All natural persons who submitted a written request to Verisk, or to any entity within the Verisk Enterprise, for disclosure of their complete consumer file under 15 U.S.C. § 1681g(a); whose initial substantive response from Verisk issued within the five years preceding the filing of this Complaint; to whom Verisk provided no supplemental disclosure of the kind described above; and whose initial substantive response omitted (a) ISO ClaimSearch or Decision Net records concerning that consumer, or (b) insurance policy records linked within Verisk's systems to a policy identified in a Coverage Verifier report furnished to that consumer.

24. Excluded from both Classes are: Verisk and its officers, directors, and employees; any entity in which Verisk has a controlling interest; the judicial officer(s) presiding over this action and members of their immediate families; and the attorneys of record in this case and their employees.

25. **Numerosity.** On information and belief, each Class is so numerous that joinder of all members is impracticable. Verisk is one of the largest consumer reporting agencies in the insurance industry, and it processes a substantial volume of § 1681g(a) disclosure requests nationwide. Verisk applies the practices alleged herein uniformly, without regard to the identity of the individual consumer making the request. Although the precise number of members of each Class is unknown to Mr. Wagner

and lies within Verisk's exclusive control, on information and belief each Class contains well in excess of 100 members, and the Undisclosed Omission Class contains many thousands of members.

26. **Commonality.** Common questions of law and fact exist as to all members of each Class and predominate over any questions affecting only individual members, including:

a) whether Verisk's procedures for responding to § 1681g(a) disclosure requests are reasonably designed to ensure that all information in a consumer's file, including information reflected in Verisk's own contemporaneously generated internal reports, is captured and included in Verisk's disclosures to the consumer;

b) whether Verisk's conduct as alleged herein constitutes a pattern or practice of violating 15 U.S.C. § 1681g(a);

c) whether Verisk's violations of 15 U.S.C. § 1681g(a) were willful within the meaning of 15 U.S.C. § 1681n, or negligent within the meaning of 15 U.S.C. § 1681o;

d) whether records maintained by Verisk's affiliates, including ISO ClaimSearch and Decision Net records, constitute part of a consumer's "file" within the meaning of 15 U.S.C. § 1681a(g) and must therefore be disclosed under 15 U.S.C. § 1681g(a);

e) the proper method for calculating statutory damages on a class wide basis under 15 U.S.C. § 1681n(a)(1)(A).

27. **Typicality.** Mr. Wagner's claims are typical of the claims of both Classes, and he is a member of each. Like members of the Supplemental Disclosure Class, Mr. Wagner submitted a written request to Verisk under 15 U.S.C. § 1681g(a), received an disclosure that did not include all information then in his file, and obtained the omitted records only after pressing Verisk further. Like members of the Undisclosed Omission Class, Mr. Wagner requested his complete file and was told that categories of records concerning him, including ISO ClaimSearch and Decision Net records, would not be disclosed, on the ground that Verisk does not regard the affiliates maintaining them as consumer reporting agencies. Every Class member's claim arises from the same practices and procedures alleged herein.

28. **Adequacy.** Mr. Wagner will fairly and adequately protect the interests of both Classes. His interests are coextensive with, and not antagonistic to, those of the Classes, and he has retained counsel experienced in FCRA and consumer class action litigation who are competent to prosecute this action on behalf of the Classes.

29. **Predominance and Superiority.** The questions of law and fact common to each Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The statutory damages available to any individual Class member under 15 U.S.C. § 1681n are relatively modest, such that individual

litigation would be economically infeasible for most Class members and would impose an unnecessary burden on the courts through duplicative proceedings involving common questions of Verisk's disclosure practices.

30. **Ascertainability.** Each Class is ascertainable, and its members may be identified through objective criteria and Verisk's own business records, including its records of § 1681g(a) disclosure requests received, which reflect the wording of each request and thereby distinguish requests for a consumer's complete file from requests limited to a particular report, the date and contents of Verisk's responses, and Verisk's internal files reflecting the information in its possession as of each request date.

31. **Concrete Injury — Supplemental Disclosure Class.** Each member of the Supplemental Disclosure Class, by definition, affirmatively requested disclosure of his or her consumer file from Verisk, received an initial substantive response that omitted information then contained in that file, and was required to undertake further effort before Verisk produced the omitted information. Each such member was denied information to which the FCRA entitled him or her at the time it was requested, and each bore the burden of extracting from Verisk what Verisk was obligated to provide in the first instance.

32. **Concrete Injury — Undisclosed Omission Class.** Each member of the Undisclosed Omission Class asked Verisk for his or her complete consumer file and did not receive it. Verisk never disclosed the omitted records, and those members remain deprived of that information to this day. Because Verisk withheld the records without telling them, these Class members have had no way to learn what Verisk holds

about them, to verify whether it is accurate, or to dispute it, which is the precise harm 15 U.S.C. § 1681g(a) exists to prevent.

33. **Individual Damages.** Mr. Wagner asserts his claim for individual actual damages on his own behalf only. The claims asserted on behalf of the Classes are for statutory damages under 15 U.S.C. § 1681n(a)(1)(A), punitive damages under 15 U.S.C. § 1681n(a)(2), and reasonable attorneys' fees and costs, none of which requires individualized proof of actual damages.

## FACTUAL ALLEGATIONS

### I. Mr. Wagner's Underlying Insurance Dispute With Frontline

34. On February 4, 2016, Mr. Wagner applied for homeowner's insurance underwritten by Frontline Insurance ("Frontline"). In connection with that application, Frontline's appointed agent requested an A-PLUS Property Report concerning Mr. Wagner from Verisk.

35. An A-PLUS Property Report is a loss-history report that Verisk generates for insurance underwriters by searching its database of claims contributed by member insurers for prior claims filed by the applicant or at the property to be insured, so that the underwriter can evaluate the risk before issuing or renewing a policy.

36. Frontline issued the policy and renewed it annually through 2025.

37. In October 2022, Mr. Wagner submitted a claim under the policy for windstorm damage to his roof. Frontline denied the claim.

38. Mr. Wagner sued Frontline in the Circuit Court of the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida (the "Circuit Court Action").

39. In the Circuit Court Action, Frontline asserted that Mr. Wagner's February 4, 2016 application had misrepresented his prior loss history. What Frontline knew about that history when it issued the policy, including what the A-PLUS Property Report it obtained from Verisk disclosed, thereby became a central issue in the case.

40. On June 3, 2025, during the Circuit Court Action, Mr. Wagner learned for the first time that Frontline had run A-PLUS reports on him in connection with underwriting and renewing his policy from 2016 through 2025, but that Frontline did not retain copies of those historical reports.

41. Because Frontline did not retain the reports, and because Verisk is the consumer reporting agency responsible for generating and maintaining that information, Mr. Wagner sought disclosure of his complete consumer file directly from Verisk under 15 U.S.C. § 1681g.

## II. Mr. Wagner's FCRA Requests and Verisk's Delayed, Incomplete Response

42. On November 26, 2025, Mr. Wagner, through counsel, sent Verisk a written request, via email and certified mail, for "a full and complete consumer disclosure of all information Verisk/ISO/A-PLUS maintains" on him, including any and all prior A-PLUS reports created or sent to any other entity regarding him.

43. Over the following three months, Mr. Wagner's counsel sent Verisk no fewer than 13 separate follow-up communications by email, mail, and telephone in an effort to obtain a complete response, as reflected in the following timeline of correspondence between the parties:

a) 11.26.25 – Letter sent via email and certified mail requesting Mr. Wagner's file.

b) 12.1.25 – Follow-up email to Verisk.

c) 12.3.25 – Follow-up email to Verisk.

d) 12.4.25 – Certified mail delivery of the 11/26 letter confirmed.

e) 12.5.25 – Follow-up email to Verisk.

f) 12.9.25 – Follow-up email to Verisk.

g) 12.10.25 – Telephone call to Verisk; the A-PLUS consumer representative could not locate the letter; a supervisor, Melissa, called back and stated Verisk had not received the documentation at the address or email to which it was sent, and provided a different intake email, fcra-npc@verisk.com.

h) 12.10.25 – The 11/26 letter was resent to fcra-npc@verisk.com.

i) 12.15.25 – Follow-up email to fcra-npc@verisk.com.

j) 12.15.25 – Melissa responded that reports were being mailed that week.

k) 12.29.25 – Reports received via U.S. mail.

l) 12.30.25 – Email to Verisk advising that the documents received were incomplete.

m) 12.31.25 – Melissa acknowledged receipt and stated Verisk was reviewing internally.

n) 1.5.26 – Follow-up email to Melissa.

o) 1.8.26 – Follow-up email to Melissa.

p) 1.9.26 – Verisk retained outside counsel, Avery Turzanski of Orrick, Herrington & Sutcliffe LLP, who requested an additional two weeks to respond.

q) 1.15.26 – Follow-up email to Turzanski requesting an update.

r) 1.20.26 – Follow-up email to Turzanski requesting an update.

s) 1.21.26 – Turzanski responded that Verisk was working on the request and expected to respond "by early next week."

t) 2.26.26 – Turzanski/Verisk's counsel sent a further production, discussed below.

44. On December 17, 2025, Verisk provided its first substantive response, consisting of a letter on VUS letterhead enclosing A-PLUS Property, A-PLUS Auto, and Coverage Verifier reports concerning Mr. Wagner. That response reflected that (a) First Protective and People's Trust Insurance had requested A-PLUS Property

History reports on Mr. Wagner within the preceding year, and (b) First Protective had requested an A-PLUS Auto History report.

45. Verisk's December 17, 2025 response did not disclose that GEICO General Insurance Company ("GEICO") had continuously insured Mr. Wagner's vehicle for more than 35 years, through 16 renewals, under an in-force policy as of the response date — notwithstanding that a Coverage Verifier report Verisk itself generated concerning Mr. Wagner on December 11, 2025, six days before its response, already reflected that GEICO policy (Policy No. 0386929905, inception January 6, 1990, 16 renewals, in force through January 6, 2026).

46. On December 30, 2025, Mr. Wagner's counsel advised Verisk in writing that its December 17, 2025 production was incomplete.

47. Verisk did not substantively respond for nearly two more months. Verisk retained outside counsel on January 9, 2026, who requested an additional two weeks to respond; Verisk's counsel then did not provide a further, substantive response until February 26, 2026 — more than seven weeks later, and only after additional follow-up emails from Mr. Wagner's counsel on January 15, January 20, and January 21, 2026.

48. In its February 26, 2026 letter, Verisk's counsel admitted, in writing, that Verisk's December 17, 2025 disclosure had been incomplete. Specifically, Verisk's counsel stated: "Verisk reviewed its investigation and identified three additional items in Mr. Wagner's consumer file: three Geico General Insurance Company ('Geico')

policy records connected to the Geico policy listed in your client's CV Report, which Verisk has attached."

49. The three GEICO policy records that Verisk admitted omitting from its December 17, 2025 disclosure existed in Mr. Wagner's file, and were in Verisk's possession, at the time of Mr. Wagner's November 26, 2025 request, as demonstrated by the fact that Verisk's own Coverage Verifier report of December 11, 2025 — generated before the December 17, 2025 disclosure — already reflected the associated GEICO policy.

50. Verisk's February 26, 2026 letter further disclosed, for the first time, an A-PLUS Property History Report dated January 26, 2026, reflecting a claim on Mr. Wagner's property (Loss Date August 8, 2025; Universal Property & Casualty Insurance Co.; Carrier Claim No. FL250132508) that had not appeared in Verisk's December 17, 2025 production.

51. Verisk identified that report as one "furnished in January 2026, after the date of your request." Verisk therefore knew how to identify a record that post-dated Mr. Wagner's request and said so expressly when one did.

52. Verisk described the three GEICO policy records in the opposite terms. It called them "three additional items in Mr. Wagner's consumer file," and stated that they were "connected to the Geico policy listed in your client's CV Report" — the Coverage Verifier report Verisk itself had generated on December 11, 2025, six days before its disclosure. Verisk did not describe those records as post-dating Mr. Wagner's request, because they did not.

53. Verisk's February 26, 2026 letter also laid out, for the first time, which of its affiliated entities it claims are and are not "consumer reporting agencies" under the FCRA, stating that "[s]ome, but not all of Verisk's affiliates are consumer reporting agencies" and that "ISO ClaimSearch reports and Decision Net Reports are not maintained or controlled by a consumer reporting agency" — a distinction Verisk never previously communicated to Mr. Wagner and that does not appear in any of Verisk's correspondence to Mr. Wagner or his counsel preceding that letter.

54. On June 11, 2026, after Mr. Wagner commenced this action, Verisk's counsel wrote to Mr. Wagner's counsel and, for the first time, identified two internet addresses through which ISO ClaimSearch records concerning Mr. Wagner could be obtained, one designated for attorneys and one for non-attorneys.

55. Verisk thereby demonstrated that it was able to identify, locate, and direct Mr. Wagner to ISO ClaimSearch data concerning him, notwithstanding its February 26, 2026 statement that such records "are not maintained or controlled by a consumer reporting agency."

56. Yet in response to Mr. Wagner's request for his complete consumer file, Verisk disclosed no ISO ClaimSearch data concerning Mr. Wagner, nor did it identify any such means of obtaining it.

57. ISO ClaimSearch is a Verisk product. Insurance Services Office, Inc. — Verisk's subsidiary — owns the ClaimSearch trademark, and Verisk's own published corporate history states that in 2008 "ClaimSearch becomes part of Verisk's broader suite of analytics and data services."

58. Verisk markets ClaimSearch for use in underwriting, and not merely in the handling of claims already made.

59. ISO ClaimSearch data concerning a consumer consists of information about the insurance claims that consumer has made, including the dates and types of prior losses, the amounts claimed and paid, and the carriers involved.

60. This information bears on the consumer's personal characteristics, mode of living, and general reputation as an insurance risk within the meaning of 15 U.S.C. § 1681a(d)(1).

61. Verisk does not dispute that insurance loss-history information of that kind is consumer-report information.

62. Verisk's February 26, 2026 letter concedes that A-PLUS, which reports the same category of information, is a consumer reporting agency. Verisk's position is that ClaimSearch differs not because of what the information is, but because of which affiliate stores it on its shared data network.

63. A communication of information bearing on those characteristics that is used, expected to be used, or collected in whole or in part for the purpose of serving as a factor in establishing a consumer's eligibility for insurance is a consumer report within the meaning of 15 U.S.C. § 1681a(d)(1).

64. On information and belief, ISO ClaimSearch data concerning Mr. Wagner was collected and is maintained, at least in part, for that purpose.

65. ISO ClaimSearch data concerning Mr. Wagner is therefore information on Mr. Wagner recorded and retained within the Verisk Enterprise, and is part of his

file within the meaning of 15 U.S.C. § 1681a(g), regardless of which affiliate's systems Verisk stores it on. It is all internally accessible by Verisk and its affiliates.

66. Verisk and its affiliates, including their "products," all share information.

67. Verisk and its affiliates, including their "products," utilize shared databases.

68. ISO ClaimSearch is an industry-wide claims database operated by Verisk's subsidiary Insurance Services Office, Inc. Verisk describes it as "the largest and most trusted P&C insurance claims intelligence network," reports participation by approximately 95% of property and casualty carriers, and markets it as providing "comprehensive loss history."

69. The claims Frontline contends Mr. Wagner failed to disclose were reported to insurers, and several were the subject of lawsuits and Civil Remedy Notices. On information and belief, those claims were submitted to and are recorded in ISO ClaimSearch.

70. Frontline queried ISO ClaimSearch concerning Mr. Wagner. Frontline's underwriting corporate representative testified that ISO ClaimSearch and A-PLUS are "two different reporting systems," and that ClaimSearch reports concerning Mr. Wagner are maintained in Frontline's claims file rather than its underwriting file. The Circuit Court found that Frontline's litigation department obtained the ISO report that revealed Mr. Wagner's prior losses after he filed suit.

71. On information and belief, the ISO ClaimSearch records Verisk maintains concerning Mr. Wagner reflect the claims on which Frontline relied, and

identify the insurers that submitted or accessed that information and the dates on which they did so.

72. Verisk does not apply its position on ISO ClaimSearch evenhandedly. Verisk supplies ClaimSearch data concerning consumers to the insurers that subscribe to it, and those insurers use that data to evaluate consumers and to contest their claims. Verisk thus makes the same body of information available to the insurers who pay for it while withholding it from the consumer whom the information concerns and to whom 15 U.S.C. § 1681g(a) entitles it.

73. To date, Verisk has never explained why the three GEICO policy records — which existed in Mr. Wagner's file as of the date of his request and were reflected in Verisk's own December 11, 2025 Coverage Verifier report — were omitted from Verisk's December 17, 2025 disclosure in the first instance.

74. Separately from its obligation to disclose the contents of Mr. Wagner's file, 15 U.S.C. § 1681g(a)(3) required Verisk to identify each person that procured a consumer report concerning Mr. Wagner during the one-year period preceding his request.

75. Verisk's December 17, 2025 response identified only three such procurements: A-PLUS Property History reports requested by First Protective and People's Trust Insurance, and an A-PLUS Auto History report requested by First Protective.

76. Verisk's own records reflect that A-PLUS reports concerning Mr. Wagner were requested in September 2025 and October 2025, within the one-year

period preceding his November 26, 2025 request, and again in December 2025 and January 2026.

77. On information and belief, Verisk's response did not identify every person that procured a consumer report concerning Mr. Wagner during that one-year period, and identified no recipient of any ISO ClaimSearch report concerning him.

**III. Verisk's Regular, Continuous Business Directed at Florida**

78. Verisk and the Verisk Enterprise do not merely respond passively to unsolicited consumer requests.

79. Verisk and the Verisk Enterprise regularly and continuously contract with insurance companies licensed to do business in the State of Florida and writing insurance policies on Florida risks, as paying subscribers to Verisk's A-PLUS and Coverage Verifier products, for the purpose of supplying those insurers with underwriting information concerning Florida residents and Florida properties.

80. The subscriber insurers identified in Mr. Wagner's file alone include Frontline Insurance, First Protective Insurance Company, People's Trust Insurance, Universal Property & Casualty Insurance Company, and GEICO General Insurance Company — each of which is licensed to transact property and/or casualty insurance business in the State of Florida and each of which requested reports from Verisk concerning a Florida resident and Florida risk addresses.

81. This subscriber relationship is continuous and ongoing, not episodic. Verisk's own Coverage Verifier report reflects that GEICO alone has been a

continuous reporting carrier on Mr. Wagner's policy since 1990, through 16 renewals, and Verisk's own records show that Florida-licensed insurers requested new A-PLUS reports concerning Mr. Wagner in September 2025, October 2025, December 2025, and January 2026 — both before and after, and independent of, Mr. Wagner's own FCRA credit file disclosure request.

82. Verisk and the Verisk Enterprise derive fees and other value from this ongoing subscription business with Florida-licensed insurers, which forms a regular and continuous part of Verisk's nationwide consumer reporting business and which Verisk has purposefully and voluntarily undertaken as an affirmative business decision, independent of any unilateral activity by Mr. Wagner.

83. Mr. Wagner's claims in this action arise out of and relate to that Florida business activity: Verisk's obligation to maintain and disclose Mr. Wagner's consumer file arises directly from Verisk's business of assembling and furnishing A-PLUS and Coverage Verifier reports concerning Mr. Wagner to Florida-licensed insurers, including Frontline, First Protective, People's Trust, Universal Property & Casualty, and GEICO.

**IV. Harm to Mr. Wagner**

84. Mr. Wagner sought his consumer file for a specific and time-sensitive purpose: he was the plaintiff in the Circuit Court Action, in which the existence and contents of the A-PLUS reports Verisk generated concerning him were directly at issue.

85. As the party prosecuting that action, Mr. Wagner bore the burden of coming forward with evidence of what Frontline had been told about his loss history. Frontline had not retained the A-PLUS reports it received. Verisk was the only entity that could supply them.

86. Verisk alone controlled whether Mr. Wagner received it.

87. By failing to disclose the complete contents of his file in response to his November 26, 2025 request, Verisk deprived Mr. Wagner of the ability to review, verify, and make use of his own consumer information at the time he was entitled by statute to receive it.

88. Mr. Wagner was required to retain counsel and to incur attorneys' fees and costs over a period of more than three months, across no fewer than 13 separate communications with Verisk and its counsel, in order to obtain information that 15 U.S.C. § 1681g(a) obligated Verisk to disclose upon request.

89. On January 26, 2026, Mr. Wagner took the deposition of Frontline's corporate representative concerning its underwriting history without the benefit of the complete disclosure Verisk was required to have provided two months earlier.

90. A deposition is a single, non-repeatable proceeding, and the expense of taking it without the information Verisk was obligated to disclose could not have been and was not cured by Verisk's later production.

91. Verisk did not produce the three GEICO policy records — which it later admitted had been in Mr. Wagner's file all along — until February 26, 2026.

92. This disclosure came one month after the deposition, and three months after Mr. Wagner's request.

93. Mr. Wagner suffered emotional distress as a result of Verisk's prolonged failure to provide information to which he was legally entitled and which he required for an ongoing legal proceeding.

94. In March 2026, the Circuit Court entered summary judgment in favor of Frontline, holding that Mr. Wagner had failed to produce evidence that Frontline had knowledge of his prior claims.

95. Mr. Wagner has moved for rehearing and has noticed an appeal of that judgment. Thus, the harm from any continued failure to disclose is ongoing.

96. Frontline obtained A-PLUS reports concerning Mr. Wagner from Verisk at the inception of his policy and multiple occasions thereafter in connection with renewal.

97. The A-PLUS data Verisk maintained on Mr. Wagner was sparse.

98. The A-PLUS Property report Verisk generated on September 10, 2025 identified two loss records, a July 23, 2022 claim with First Protective and an October 9, 2024 claim with Universal Property & Casualty, and nothing from the five-year period preceding Mr. Wagner's 2016 application.

99. A timely and complete disclosure would have shown Mr. Wagner what Verisk's A-PLUS system did and did not contain concerning him, and would have permitted him to address, on the record before the Circuit Court, the loss history Frontline's underwriters reviewed through that system.

100. That evidence would have assisted Mr. Wagner whichever way it came out: If the A-PLUS reports Frontline obtained disclosed his prior claims, Frontline renewed his policy and accepted his premiums for years with knowledge of them. If they did not, Frontline's own loss-history tool never surfaced the claims Frontline now contends were material to its decision to issue the policy.

101. To the extent the March 2026 judgment is not disturbed, Mr. Wagner alleges in the alternative, and as additional actual damages, that Verisk's failure to disclose the complete contents of his file deprived him of that information.

**COUNT I**

**<u>VERISK'S WILLFUL VIOLATION OF THE FCRA, 15 U.S.C. § 1681g(a)</u>**

**(On Behalf of Mr. Wagner and the Classes)**

102. Mr. Wagner realleges and incorporates paragraphs 1 through 101 as if fully set forth herein.

103. Verisk violated 15 U.S.C. § 1681g(a) by failing to disclose all information in Mr. Wagner's consumer file at the time of his November 26, 2025 request, including, at minimum, the three GEICO policy records that Verisk's own counsel later admitted existed in Mr. Wagner's file and were in Verisk's possession as of that date. Verisk also failed to disclose the ISO ClaimSearch records concerning Mr. Wagner described above, which on information and belief are part of his file. On information and belief, Verisk likewise violated 15 U.S.C. § 1681g(a) as to each member of the Classes by failing to disclose all information in each Class member’s file as of the date of that member’s request, pursuant to the common practices alleged herein.

104. Verisk's violation was willful, or in reckless disregard of its statutory obligations, in that: (a) Verisk generated and possessed a Coverage Verifier report reflecting the GEICO policy at issue on December 11, 2025, six days before issuing its December 17, 2025 disclosure, yet failed to include the associated GEICO policy records in that disclosure; (b) Verisk retained outside counsel specifically to address its FCRA obligations, yet still required more than three months and at least 13 separate communications from Mr. Wagner before acknowledging the omission; (c) Verisk has never explained why records plainly within its possession were omitted from its initial response; and (d) on information and belief, Verisk's conduct as to Mr. Wagner reflects a pattern and practice known to Verisk from other consumers' complaints, and that Verisk has continued notwithstanding that knowledge; and (e) Verisk supplies ISO ClaimSearch data concerning consumers to subscribing insurers — including data obtained concerning Mr. Wagner and used against him in the Circuit Court Action — while representing to Mr. Wagner that those same records fall outside the FCRA, a position Verisk abandoned in practice on June 11, 2026 when it identified the means by which he could obtain them.

105. Verisk's failure to disclose caused concrete injury to Mr. Wagner and to each member of the Classes, as set forth above. Mr. Wagner and each Class member were denied information to which the FCRA entitled them at the time they requested it, and each was required to undertake further effort to obtain from Verisk what Verisk was obligated to provide in the first instance.

106. As a direct and proximate result of Verisk's willful violation, Verisk is liable to Mr. Wagner and each member of the Classes, pursuant to 15 U.S.C. § 1681n, for the greater of actual damages or statutory damages of not less than $100 and not more than $1,000, for punitive damages, and for reasonable attorneys' fees and costs.

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, respectfully requests that this Court enter judgment in his favor and against Defendant Verisk Analytics, Inc. for:

a. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), appointment of Mr. Wagner as representative of both Classes, and appointment of undersigned counsel as Class Counsel;

b. Statutory damages for Mr. Wagner and each member of the Classes pursuant to 15 U.S.C. § 1681n(a)(1)(A), or, alternatively, Plaintiff's actual damages;

c. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

d. Reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3); and

e. Such other relief as this Court deems just and proper.

**COUNT II**

**VERISK'S NEGLIGENT VIOLATION OF THE FCRA, 15 U.S.C. § 1681o**

**(Pled in the Alternative to Count I; On Behalf of Mr. Wagner and the Classes)**

107. Mr. Wagner realleges and incorporates paragraphs 1 through 101 as if fully set forth herein, and pleads this Count in the alternative to Count I.

108. Verisk violated 15 U.S.C. § 1681g(a) by failing to disclose all information in Mr. Wagner's consumer file at the time of his request, as set forth above.

109. Verisk's violation was, at a minimum, negligent. Verisk failed to adopt or follow reasonable procedures to ensure that information already within its possession, and reflected in its own internal reports — including the December 11, 2025 Coverage Verifier report — was captured and included in the consumer disclosure it issued six days later, and it was reasonably foreseeable that this failure would cause Mr. Wagner and the Classes harm.

110. As a direct and proximate result of Verisk's negligent violation, Mr. Wagner suffered actual damages, including but not limited to: (a) attorneys' fees and costs incurred in the 13 or more communications and follow-up efforts required to obtain a complete disclosure from Verisk between November 2025 and February 2026; (b) costs associated with taking the January 26, 2026 deposition of Frontline's corporate representative without the benefit of Verisk's complete, statutorily required disclosure; and (c) emotional distress and anxiety caused by Verisk's prolonged failure to provide him information to which he was legally entitled. On information and belief, other members of the Classes suffered analogous actual damages as a result of Verisk’s common practices, subject to proof at trial or through claims administration.

111. Verisk is therefore liable, pursuant to 15 U.S.C. § 1681o, for Mr. Wagner and each member of the Classes for actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, respectfully requests that this Court enter judgment in his favor and against Defendant Verisk Analytics, Inc. for:

a. Certification of this action as a class action pursuant to Fed. R. Civ P. 23(a) and 23(b)(3), appointment of Mr. Wagner as representative of both Classes, and appointment of undersigned counsel as Class Counsel;

b. Actual damages for Mr. Wagner and each member of the Classes pursuant to 15 U.S.C. § 1681o(a)(1);

c. Reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681o(a)(2); and

d. Such other relief as this Court deems just and proper.

**COUNT III**

**<u>VERISK'S WILLFUL VIOLATION OF THE FCRA, 15 U.S.C. § 1681g(a)(3)</u>**

**(On Behalf of Mr. Wagner)**

112. Mr. Wagner realleges and incorporates paragraphs 1 through 101 as if fully set forth herein.

113. 15 U.S.C. § 1681g(a)(3) required Verisk, upon Mr. Wagner's request, to identify each person that procured a consumer report concerning him during the one-year period preceding the date of that request.

114. Verisk failed to do so. Verisk's December 17, 2025 response identified three procurements of A-PLUS reports and identified no recipient of any ISO ClaimSearch report concerning Mr. Wagner. On information and belief, one or more persons procured an ISO ClaimSearch report concerning Mr. Wagner during the one-year period preceding his request, and Verisk's response identified none of them.

115. Verisk's violation was willful, or in reckless disregard of its statutory obligations. The information necessary to identify each procurement was contained in Verisk's own systems, and Verisk drew on those systems to produce the partial list it did provide.

116. As a direct and proximate result of Verisk's willful violation, Verisk is liable to Mr. Wagner, pursuant to 15 U.S.C. § 1681n, for the greater of actual damages or statutory damages of not less than $100 and not more than $1,000, for punitive damages, and for reasonable attorneys' fees and costs.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant Verisk Analytics, Inc. for:

a. Statutory damages for Mr. Wagner pursuant to 15 U.S.C. § 1681n(a)(1)(A), or, alternatively, his actual damages;

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3); and

d. Such other relief as this Court deems just and proper.

**COUNT IV**

**<u>VERISK'S NEGLIGENT VIOLATION OF THE FCRA, 15 U.S.C. § 1681o</u>**

**(Pled in the Alternative to Count III; On Behalf of Mr. Wagner)**

117. Mr. Wagner realleges and incorporates paragraphs 1 through 101 as if fully set forth herein, and pleads this Count in the alternative to Count III.

118. Verisk violated 15 U.S.C. § 1681g(a)(3) by failing to identify each person that procured a consumer report concerning Mr. Wagner during the one-year period preceding his request, as set forth above.

119. Verisk's violation was, at a minimum, negligent. Verisk failed to adopt or follow reasonable procedures to ensure that its response identified each person that had procured a consumer report concerning Mr. Wagner during that period.

120. As a direct and proximate result of Verisk's negligent violation, Mr. Wagner suffered actual damages, including attorneys' fees and costs incurred in seeking a complete response from Verisk.

121. Verisk is therefore liable to Mr. Wagner, pursuant to 15 U.S.C. § 1681o, for actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant Verisk Analytics, Inc. for:

a. Actual damages for Mr. Wagner pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681o(a)(2); and

c. Such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: September 8, 2026

Respectfully submitted,

*/s/ Thomas M. Bonan*
Thomas M. Bonan, Esq.
Florida Bar No.: 118103
**SERAPH LEGAL, P.A.**
TBonan@SeraphLegal.com
3505 East Frontage Road, Suite 145
Tampa, FL 33607
Tel: 813-567-1230
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 9, 2026, I electronically filed a true and correct copy of the foregoing document with the ECF system, which will serve it on Defendant's counsel of record.

/s/ *Thomas Bonan*
Thomas Bonan, Esq.